**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| Martin Sarmiento Adrian, Petitioner -vs- Charles L. Ryan, Respondent. | CV-13-1920-PHX-PGR (JFM) **Report & Recommendation on Petition for Writ of Habeas Corpus** |
|---|---|

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at San Luis, Arizona, filed an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on April 30, 2014 (Doc. 12).  On November 7, 2014, Respondent filed his Response ("Limited Answer") (Doc. 24).   Petitioner has not filed a reply.

The Petitioner's Petition is now ripe for consideration.   Accordingly, the undersigned makes the following proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND
## A. FACTUAL BACKGROUND

In disposing of Petitioner's direct appeal, the Arizona Court of Appeals summarized the evidence at trial as follows:

> The evidence at trial demonstrated that police and probation officers arrested Adrian at a home in west Phoenix on unidentified charges. Adrian was the only person in the house at the time. He was in his underwear, and told the officers that he had been taking a shower. After the officers conducted a protective sweep of the

1

house, one of the probation officers asked Adrian which room he slept in so that they could search his personal belongings. Adrian pointed in the direction of the northwest bedroom and said that was where he slept.

In a search of the bedroom, police discovered a rifle in plain view, two loaded revolvers under the mattress, marijuana in various locations, and pipes and digital scales commonly used for illicit drugs in the dresser drawers. An identification card with Adrian's name and picture was found in a dresser drawer, and men's clothing in Adrian's size was found in a laundry hamper. The homeowner, Adrian's cousin, arrived at the scene and told the officers that Adrian lived in the house with her.

(Exhibit M, Mem. Dec. at 2-3.)  (Exhibits to the Answer, Doc. 24, are referenced herein as "Exhibit ___.")

## B. PROCEEDINGS AT TRIAL

On August 27, 2008, Petitioner was indicted (Exhibit A) in Maricopa County Superior Court on charges of marijuana possession, paraphernalia, and two counts of weapons misconduct, one based on the handgun and one on the rifle.  The state filed a series of allegations of historical priors, related priors, commission while on release, and special aggravating circumstances based on the weapons.  (Exhibits B, C, D, and E.)

Petitioner proceeded to a jury trial, and was convicted on all but the weapons misconduct charge relating to the handgun.  (Exhibit F, M.E. 2/2/09; Exhibit M, Mem. Dec. at 3-4.)  He then proceeded to a trial to the court on the prior convictions, and the court found seven prior convictions, two of which qualified for consideration as historical priors.  (Exhibit G, M.E. 3/2/09; Exhibit M, Mem. Dec. at 4.)  On March 23, 2009, Petitioner was sentenced to presumptive, concurrent terms, the longest of which was ten years.  (Exhibit H, Sentence; Exhibit M, Mem. Dec. at 4.)

## C.  PROCEEDINGS ON DIRECT APPEAL

Petitioner filed a direct appeal arguing: that the trial court committed reversible error by: (1) admitting into evidence his statement to law enforcement; (2) failing to sanction *Brady* and discovery violations; and (3) finding that the evidence at trial and at sentencing was sufficient to prove his prior felony convictions.  In a Memorandum

Decision filed September 2, 2010 (Exhibit M), the Arizona Court of Appeals affirmed Petitioner's convictions and sentences.

Petitioner asserts that he appealed to the Arizona Supreme Court. (Amend. Petition, Doc. 12 at 3.) However, the date of filing identified is December 4, 2009 (*id.*), prior to the decision of the Arizona Court of Appeals (Exhibit M). Further, the Order and Mandate from the Arizona Court of Appeals (Exhibit N) reflects that no petition for review by the Arizona Supreme Court was filed. The appellate court's docket reflects that Petitioner did seek and was granted an extension of time to seek review, until October 27, 2010. (Exhibit NN at 3.) However, no such petition shows as being filed. (*Id.*) Respondent alleges that no further review was sought. (Answer, Doc. 24 at 6.) The allegations of a habeas answer, "if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248. Petitioner has not traversed that allegation.

The undersigned finds that Petitioner did not file a motion for reconsideration or petition for review from the decision of the Arizona Court of Appeals.


**D. PROCEEDINGS ON POST-CONVICTION RELIEF**

**First PCR Proceeding** – Petitioner commenced his first PCR proceeding by filing a Notice of Post-Conviction Relief and Waiver of Counsel (Exhibit O) on October 20, 2009. (The proceeding was commenced either prior to or during the pendency of Petitioner's direct appeal.) On March 3, 2010, Petitioner filed his *pro per* Petition for Post-Conviction Relief arguing a Fourth Amendment search and seizure violation, a Fourteenth Amendment denial of due process based upon incompetency to stand trial and Sixth Amendment ineffective assistance of counsel claim based on counsel's for failure to investigate Petitioner's competency to stand trial, and bad faith prosecution given the lack of admissible evidence.

On October 18, 2010 (after the denial of Petitioner's direct appeal), the PCR court summarily dismissed the Petition for failure to present a colorable claim for relief.

(Exhibit U, M.E. 10/18/10.)

Petitioner alleges in the Petition that he sought review by both the Arizona Court of Appeals and the Arizona Supreme Court in this proceeding. (Amend. Pet., Doc. 12 at 5.) However, Petitioner's only post-appeal foray to the Arizona Court of Appeals was his Petition for Review, filed December 1, 2011 (Exhibit EE). Although that petition left empty the form blank for specifying the date of the trial court decision to be reviewed (*id.* at 1), appended to the petition was a copy of the PCR court's order in Petitioner's second PCR proceeding, dated October 21, 2011, not from his first PCR proceeding. In deciding that Petition for Review, the Arizona Court of Appeals found that Petitioner "did not seek review" of the dismissal of his original PCR petition, and considered that proceeding to be a review of his "successive notice of post-conviction relief" and "the *pro se* petition that followed." (Exhibit KK, Mem. Dec. at 2.)

Accordingly, the undersigned finds that Petitioner did not seek further review of the PCR court's ruling in his first PCR proceeding.

**Second PCR Proceeding** – On December 23, 2010, Petitioner filed a second Notice of Post-Conviction Relief (Exhibit V). That Notice was dated November 23, 2010. (*Id.* at 3.) However, Respondent presents a mail log purporting to reflect that Petitioner delivered his PCR notice to prison authorities for mailing on December 17, 2010 (Exhibit W). Respondent argues that December 17, 2010 was the date it was delivered to prison officials. (Answer, Doc. 24 at 8, n. 4.) Petitioner does not reply to that assertion. The allegations of a habeas answer, "if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C. § 2248. The undersigned finds that the second PCR Notice (Exhibit V) was delivered to prison officials for mailing on December 17, 2010.

Counsel was appointed to represent Petitioner (Exhibit X, M.E. 1/10/11), and eventually filed a Notice of Completion (Exhibit AA) evidencing an inability to find an issue for review. Petitioner was granted leave to file a *pro per* PCR petition, and counsel was directed to remain in an advisory capacity. (Exhibit BB, M.E. 6/27/11.)

4

Petitioner filed his second *pro per* PCR petition (Exhibit CC), checking off a number of claims for relief on the form petition, but arguing only that he had not lived at the place of arrest, he was not given a fair trial because he wasn't allowed to call witnesses, he was never read his rights, and no fingerprint or DNA evidence was produced at trial.   On November 7, 2011, the PCR court summarily dismissed the petition for failing to state a colorable claim.  (Exhibit DD, M.E. 11/7/11.)

Petitioner then filed on December 1, 2011, a Petition for Review (Exhibit EE), arguing similar facts.  That Petition was eventually transferred from Division One of the Arizona Court of Appeals to Division Two.  (Exhibit JJ, Order 9/13/12.)  On November 15, 2012, the Division Two of the Arizona Court of Appeals issued its Memorandum Decision (Exhibit KK), finding Petitioner's claims precluded from review because of his failure to raise them previously, and because they were without merit.

Petitioner did not seek further review.  (Exhibit LL, Mandate, 5/7/13.)

**Third "PCR" Proceeding** - On February 16, 2012, during the pendency of the petition for review on the 2nd PCR proceeding, the PCR court (Hon. Douglas L. Rayes) issued a *sua sponte* order appointing the Office of Public Defense Services to review the representation by *PCR counsel* in Petitioner's second PCR proceeding.  (Exhibit FF, M.E. 2/16/12.)  On May 29, 2012, counsel filed a Notice of Completion of Review (Exhibit II), evidencing an inability to find an issue for review with regard to the representation by *appellate counsel*.

Petitioner asserts that he sought review by the Arizona Court of Appeals in his third PCR proceeding.  (Amend. Pet., Doc. 12 at 5.)  Assuming that Petitioner refers to this *sua sponte* review, Petitioner provides no record of seeking such review.  Respondent does not address the allegation.  However, Petitioner identifies his third petition as having commenced on December 7, 2011.  (Amend. Pet., Doc. 12 at 5.)  This correlates with Petitioner's Petition for Review in his second PCR proceeding, and not to this third PCR proceeding.

Based on the absence of any record to support the allegation of seeking review of

this *sua sponte* proceeding, the undersigned finds that no such review was sought.

## E.  PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the current case by filing his original Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on September 17, 2013 (Doc. 1). In an Order filed December 13, 2013 (Doc. 5), the Court noted the Petition was unsigned and directed Petitioner to file a separate certification.  Petitioner complied on December 30, 2013 (Doc. 6.)

That original Petition asserted four grounds for relief:

> (1)    "I never owned no guns or ever had a gun charge ever and no fingerprints or D.N.A. was found on anything in that house that were mine. I need help. I don't know to[o] much about the law. I need legal help to get me thr[ough] this case."
> (2)    "I never owned any guns or was any fingerprints of m[ine] found or D.N.A. on any guns and I never lived there."
> (3)    "Guns that were found in a room that I did not live in. No D.N.A. was found or fingerprints."
> (4)    "The warrant was a [illegible] warrant. It wasn't a s[earc]h warrant and that's what they came [and] did. The[y] se[arc]hed a house that wasn't mine. 4010 W. Tonto. I never lived there. My co[u]sin did[,] not me."

(Order 3/31/14, Doc. 11 at 2.)

On March 31, 2014, the Court dismissed that petition with leave to amend for failure to identify any federal claims.  (Order 3/31/14, Doc. 11.)

On April 30, 2014, Petitioner filed the instant First Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 12).  Petitioner's Amended Petition asserts the following four grounds for relief:

1.  he was denied effective assistance of trial counsel and the trial court abused its discretion, in violation of the Sixth Amendment;

2.  he did not receive a fair trial, in violation of his Sixth Amendment rights, "because he lacked the requisite competency to understand the proceedings against him, let alone the ability to assist in his own defense;"

3.  his Fourteenth Amendment rights were violated by an "illegal search and seizure"

6

and "unlawful arrest;" and

    4.  his Sixth and Fourteenth Amendment rights were violated by "prosecutorial misconduct" and abuse of the court's discretion.

On July 25, 2014, the Court directed service and an answer to the Amended Petition. (Order 7/25/14, Doc. 13.)

    **Response** – After a series of extensions, on November 7, 2014, Respondent filed his Response ("Limited Answer") (Doc. 24).  Respondent argues that Grounds 1 and 2 are barred by the habeas statute of limitations (*id.* at 9, *et seq.*), Grounds 3 and 4 are not cognizable claims under *Stone v. Powell*, 428 U.S. 465 (1976) (*id.* at 17, *et seq.*), and that all of Petitioner's grounds for relief are procedurally defaulted (*id.* at 19, *et seq.*).

    **Reply** – The Court's service Order (Doc. 13) provided Petitioner 30 days after service of an answer in which to reply.  Petitioner has not filed a reply, and the time to do so has expired.

## III. APPLICATION OF LAW TO FACTS

### A.  TIMELINESS

### 1.   One Year Limitations Period

    Respondent asserts that portions of Petitioner's Petition is untimely.  As part of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress provided a 1-year statute of limitations for all applications for writs of habeas corpus filed pursuant to 28 U.S.C. § 2254, challenging convictions and sentences rendered by state courts.  28 U.S.C. § 2244(d).  Petitions filed beyond the one year limitations period are barred and must be dismissed.  *Id.*

### 2.  Commencement of Limitations Period

    **Conviction Final** - The one-year statute of limitations on habeas petitions generally begins to run on "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. §

2244(d)(1)(A).[1]

Here, Petitioner's direct appeal remained pending through September 2, 2010, when the Arizona Court of Appeals denied his direct appeal. (Exhibit M, Mem. Dec.) Thereafter, Petitioner would ordinarily have had 35 days to seek further review, or until Thursday, October 7, 2010. Ariz. R. Crim. P. 31.19(a) (30 days for petition for review); Ariz. R. Crim. P. 1.3 (additional five days after mailing); *State v. Zuniga*, 163 Ariz. 105, 106, 786 P.2d 956, 957 (1990) (applying Rule 1.3(a) to mailed appellate decisions). However, Petitioner was granted an extension through October 27, 2010 to seek further review. (Exhibit NN, Ct. App. Docket at 3.) The undersigned has found hereinabove that no further review was sought. (*See infra* Section II(C).) Accordingly, Petitioner's time to seek further review expired and his conviction became final on October 27, 2010.

**Conclusion re Commencement** - Therefore, Petitioner's one year began running on October 28, 2010, and without any tolling expired on October 27, 2011, making his Amended Petition, filed April 30, 2014 Petition over 30 months delinquent.

**3. Statutory Tolling**

The AEDPA provides for tolling of the limitations period when a "properly filed application for State post-conviction or other collateral relief with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). This provision only applies to state proceedings, not to federal proceedings. *Duncan v. Walker*, 533 U.S. 167 (2001).

Petitioner's limitations period ordinarily would have commenced running on October 28, 2010. Petitioner's First PCR proceeding was commenced on October 20, 2009, before his limitations period began running. It remained pending until October 18, 2010, when the PCR court dismissed the proceeding. (Exhibit U, M.E. 10/18/10.) At that time, Petitioner's limitations period still had not commenced running.

Petitioner's next PCR proceeding was not commenced until December 17, 2010,

---

[1] Later commencement times can result from a state created impediment, newly recognized constitutional rights, and newly discovered factual predicates for claims. *See* 28 U.S.C. § 2244(d)(1)(B)-(D). Petitioner proffers no argument that any of these apply.

when his second PCR Notice (Exhibit V) was delivered to prison officials for mailing. *See Porter v. Ollison,* 620 F.3d 952, 958 (9th Cir. 2010) (for purposes of statutory tolling under 28 U.S.C. § 2244(d), *pro se* prisoner's state filings are deemed filed when delivered to prison officials for mailing - prison mailbox rule). Petitioner's one year had commenced running on October 28, 2010. Thus at the time of his "filing" of his second PCR proceeding on December 17, 2010, 50 days of his one year had expired, and he had 315 days remaining. That proceeding remained pending through November 15, 2012, when the Arizona Court of Appeals issued its Memorandum Decision (Exhibit KK).

In the interim, the PCR court directed a review of PCR (and/or appellate) counsel's actions in the second PCR proceeding. Statutory tolling only applies to a "properly filed application." 28 U.S.C. § 2244(d)(2). Thus the review of counsel's representation conducted during the pendency of the second PCR proceeding was not an "application" by Petitioner, but a *sua sponte* action by the PCR court. Thus its pendency would not qualify for tolling. Even if it did, it commenced on February 16, 2012 (Exhibit FF, M.E. 2/16/12), and ended on May 29, 2012, when counsel filed her Notice of Completion of Review (Exhibit II). This was entirely within the pendency of Petitioner's second PCR proceeding, and thus would not result in additional tolling.

Accordingly, Petitioner's limitations period began running again on November 16, 2012, and expired 315 days later, on Friday, September 27, 2013, ten days after Petitioner filed his original habeas Petition (Doc. 1).

## 4. Effect of Failure to Sign

Petitioner's original Petition (Doc. 1) was unsigned. Petitioner's separate certification was not filed until December 30, 2013 (Doc. 6), after Petitioner's one year had expired. A habeas petition must "be in writing signed and verified." 28 U.S.C. § 2242. *See also* Rule 2(c), Rules Governing Section 2254 Cases ("petition must….be signed under penalty of perjury"). However, the Ninth Circuit has held that, although the district court may refuse to file or may dismiss an unsigned petition, the district court

nonetheless "may, if it sees fit, disregard" the failure. *Hendricks v. Vasquez*, 908 F.2d 490, 491 (9th Cir. 1990). *Cf. Becker v. Montgomery*, 532 U.S. 757 (2001) (despite requirement for signature, unsigned notice of appeal effective to meet appeal deadline).

Consequently, the undersigned concludes that, despite the absence of a signature within the limitations period, Petitioner's original Petition (Doc. 1) was nonetheless timely.

## 5.  Relation Back of Amended Petition

However, the petition under consideration is not the original, timely Petition (Doc. 1), but the Amended Petition (Doc. 12), which was not filed until April 30, 2014, over seven months after Petitioner's one year expired.

Statutory tolling under 28 U.S.C. § 2244(d)(2) is available only for state petitions, not federal ones. *Duncan v. Walker*, 533 U.S. 167 (2001). Thus, the pendency of Petitioner's original habeas Petition (Doc. 1) did not toll the running of the limitations period.

However, Federal Rule of Civil Procedure 15(c)(2) provides that an "amendment to a pleading relates back to the date of the original pleading" when, in pertinent part, "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." This Rule has been held applicable to habeas proceedings, which are essentially civil in nature. *Mayle v. Felix*, 545 U.S. 644, 655 (2005).

"Relation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims." *Id.* at 659. "An amended habeas petition, we hold, does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle*, 545 U.S. at 650.

Respondent argues that Grounds 1 and 2 of the Amended Petition do not share a common core of operative facts with any claims attempted to be set out in the original

Petition, thus do not relate back, and are therefore untimely.  (Answer, Doc. 24 at 12.)  In coming to this conclusion, Respondent characterizes the original Grounds 1, 2, and 3 as contesting the sufficiency of the evidence, and Ground 4 as asserting a claim based upon an illegal search.  (Answer, Doc. 24 at 13.)   Petitioner has not replied to counter that characterization.

**Grounds 3 and 4 Relate Back** - Respondent properly concludes that current Ground 3 asserts a claim of illegal search comparable to that in original Ground 4, and is thus timely.  Respondent also properly concludes that current Ground 4 asserts a claim of prosecutorial misconduct founded upon pursuit of charges unsupported by evidence comparable to the allegations of insufficient evidence asserted in original Grounds 1, 2 and 3.  Thus, amended Grounds 3 and 4 arise from a common core of operative facts asserted in the original Petition, thus relate back in time to the original Petition, and therefore are timely.

**Grounds 1 and 2 Do Not Relate Back** - Amended Ground 1 asserts claims of ineffective assistance and abuse of discretion founded upon the failure of counsel and the trial court to pursue issues surrounding Petitioner's competency to stand trial.  (Amend. Pet., Doc. 12 at 6.)  Amended Ground 2 argues that Petitioner did not receive a fair trial, in violation of his Sixth Amendment rights, "because he lacked the requisite competency to understand the proceedings against him, let alone the ability to assist in his own defense."  (*Id.* at 7.)

Petitioner's original Petition made no reference to Petitioner's competency to stand trial, or the failure of counsel or trial court to investigate any lack thereof.  At most, the original Petition made reference in Ground 1 that Petitioner currently suffers from mental health issues:  "[P]lease help me with this case. I am Mental Health ad I don't know how to do to[o] much of this paper work."  (Orig. Pet., Doc. 1 at 6.)

The operative fact in Petitioner's original assertion was simply that Petitioner *currently* suffers from a mental health condition.  The operative fact underlying the allegations of amended Grounds 1 and 2 is Petitioner's mental health at the time of trial.

Petitioner's mental health some five years after trial, although potentially not wholly unrelated, is a very different thing factually from his mental competency at the time of trial.   Thus, the allegations in the amended Grounds 1 and 2 differ in *time* from the original Ground 1.

Further, it is the peculiar condition of not just general mental health concerns, but the unique mental characteristic of competency to stand trial that underlies amended Grounds 1 and 2.  *See Godinez v. Moran*, 509 U.S. 389, 402 (1993) ("Requiring that a criminal defendant be competent has a modest aim: It seeks to ensure that he has the capacity to understand the proceedings and to assist counsel."); and *United States v. Widi*, 684 F.3d 216, 221 (1st Cir. 2012) ("A defendant may have serious mental illness while still being able to understand the proceedings and rationally assist his counsel.")

Moreover, the essence of his claim in amended Ground 1 is not simply Petitioner's competency at the time of trial, but the failures of trial counsel and the trial court to address that issue.  Nothing in his original Ground 1 addressed anything about the conduct of trial counsel or the trial court, but instead the Ground focuses on the sufficiency of the evidence to convict Petitioner.

Accordingly, the allegations in the amended Grounds 1 and 2 also differ in *type* from those in original Ground 1.

Therefore, amended Grounds 1 and 2 are different in time and type from Petitioner's original allegations, thus do not arise from a common core of operative facts as the original Petition, accordingly do not relate back in time, and are therefore untimely.

**Summary re Amended Claims** – Based on the foregoing, the undersigned concludes that amended Grounds 1 and 2 do not relate back to the original Petition, and thus are untimely, but amended Grounds 3 and 4 do relate back and thus are timely.

**4.  Equitable Tolling**

"Equitable tolling of the one-year limitations period in 28 U.S.C. § 2244 is

available in our circuit, but only when 'extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time' and 'the extraordinary circumstances were the cause of his untimeliness.'"  *Laws v. Lamarque*, 351 F.3d 919, 922 (9th Cir. 2003).

> To receive equitable tolling, [t]he petitioner must establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way. The petitioner must additionally show that the extraordinary circumstances were the cause of his untimeliness, and that the extraordinary circumstances ma[de] it impossible to file a petition on time.

*Ramirez v. Yates,* 571 F.3d 993, 997 (9th Cir. 2009) (internal citations and quotations omitted).  "Indeed, 'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.' " *Miranda v. Castro,* 292 F.3d 1063, 1066 (9th Cir. 2002)  (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.). Petitioner bears the burden of proof on the existence of cause for equitable tolling.  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) ("Our precedent permits equitable tolling of the one-year statute of limitations on habeas petitions, but the petitioner bears the burden of showing that equitable tolling is appropriate.").

Petitioner does not proffer any grounds for equitable tolling, and the undersigned finds none.  To the extent that Petitioner might rely upon his purported mental health issues, his "mental retardation" (Amend. Pet. Doc. 1 at 7), or his untrained *pro se* status, the undersigned finds no basis for equitable tolling.

**Untrained, *Pro Se* Status** - "It is clear that *pro se* status, on its own, is not enough to warrant equitable tolling." *Roy v. Lampert,*  465 F.3d 964, 970 (9th Cir. 2006). A prisoner's "proceeding *pro se* is not a 'rare and exceptional' circumstance because it is typical of those bringing a § 2254 claim." *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000).   And, Petitioner's lack of familiarity with the law and lack of legal assistance do not toll the limitations period. *See Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) ("a *pro se* petitioner's lack of legal sophistication is not, by itself, an

1   extraordinary circumstance warranting equitable tolling").  Moreover, because there is

2   no right to legal assistance in seeking any type of post-conviction relief, lack of legal

3   assistance in seeking post-conviction relief cannot form the basis for equitable tolling.

4   *See Lawrence v. Florida*, 549 U.S. 327, 336-337 (2007).

5       **Mental Impairment** - "Where a habeas petitioner's mental incompetence in fact

6   caused him to fail to meet the AEDPA filing deadline, his delay was caused by an

7   "extraordinary circumstance beyond [his] control," and the deadline should be equitably

8   tolled."  *Laws v. Lamarque*, 351 F.3d 919, 923 (9th Cir. 2003).  "However…mental

9   incompetence is not a *per se* reason to toll a statute of limitations. Rather, the alleged

10  mental incompetence must somehow have affected the petitioner's ability to file a timely

11  habeas petition."  *Nara v. Frank,* 264 F.3d 310, 320 (3rd Cir. 2001), *overruled in part on*

12  *other grounds by Carey v. Saffold*, 536 U.S. 214 (2002).

13      In *Bills v. Clark*, 628 F.3d 1092 (9th Cir. 2010), the Ninth Circuit articulated a

14  two-part test to determine whether a mental impairment amounts to an "extraordinary

15  circumstance" warranting equitable tolling. The impairment must have (1) been "so

16  severe that the petitioner was unable personally . . . to understand the need to timely file .

17  . . a habeas petition," and (2) "made it impossible under the totality of the circumstances

18  to meet the filing deadline despite petitioner's diligence." *Id.* at 1093.

19      Although mental illness may in some cases warrant an evidentiary hearing to

20  determine the scope of the illness, *Laws*, 351 F.3d at 923–24, a district court is not

21  obligated to hold such a hearing where "the record is amply developed, and where it

22  indicates that the petitioner's mental incompetence was not so severe as to cause the

23  untimely filing of his habeas petition[.]" *Roberts v. Marshall*, 627 F.3d 768, 773 (9th Cir.

24  2010).

25      The ability to file petitions during the limitations period is evidence that

26  Petitioner's mental illness did not prevent him from filing a habeas petition. *See Roberts,*

27  627 F.3d at 773; *Gaston v. Palmer*, 417 F.3d 1030, 1035 (9th Cir. 2005) ("Because

28  [petitioner] was capable of preparing and filing state court petitions [during the

14

limitations period], it appears that he was capable of preparing and filing a [federal] petition during the time in between those dates."), modified on other grounds, 447 F.3d 1165 (9th Cir. 2006); *see also Laws*, 351 F.3d at 923 ("Of course, a petitioner's statement [of mental illness], even if sworn, need not convince a court that equitable tolling is justified should countervailing evidence be introduced.").

Here, Petitioner actually did manage to file his original habeas petition within the deadline, albeit just barely.  Petitioner proffers nothing to show with diligence he could not have included the claims asserted in his Amended Petition within the same time.  Nor does he proffer anything to show that his failure to assert the facts underlying the claims in Grounds 1 and 2 (the untimely claims) were caused by any mental impairment.  For example, he does not suggest that he was previously unaware of his mental incapacity, or was previously incapable of appreciating its potential legal significance.

Based upon the foregoing, the undersigned finds no basis of the application of equitable tolling.

**5.  Actual Innocence**

To avoid a miscarriage of justice, the habeas statute of limitations in 28 U.S.C. § 2244(d)(1) does not preclude "a court from entertaining an untimely first federal habeas petition raising a convincing claim of actual innocence."  *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1935 (2013).  To invoke this exception to the statute of limitations, a petitioner "'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'"  *Id.* at 1935 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  This exception, referred to as the "*Schlup* gateway," applies "only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.' "  *Id.*  at 1936 (quoting *Schlup,* 513 U.S. at 316).

Petitioner makes no such claim of actual innocence in this proceeding.

Petitioner does argue in his Ground 4 that there was insufficient evidence to support the prosecution. But, a finding of "actual innocence" is not to be based upon a finding that insufficient evidence to support the charge was presented at trial, but rather upon affirmative evidence of innocence. *See U.S. v. Ratigan*, 351 F.3d 957 (9th Cir. 2003) (lack of proof of FDIC insurance in a bank robbery case, without evidence that insurance did not exist, not sufficient to establish actual innocence). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

Petitioner presents no new evidence that he is actually innocent of the charges.

**6.  Summary re Statute of Limitations**

Taking into account the available statutory tolling, Petitioner's one year habeas limitations period expired on September 27, 2013, making his original Petition timely but his Amended Petition untimely.  However, because amended Grounds 3 and 4 relate back to the timely original Petition, they are timely.  Grounds 1 and 2 are not. Petitioner has shown no basis for additional statutory tolling, and no basis for equitable tolling or actual innocence to avoid the effects of his delay.  Consequently, Grounds 1 and 2 of the Amended Petition must be dismissed with prejudice as untimely.

**B.  EXHAUSTION & PROCEDURAL DEFAULT**

Respondent argues that all of Petitioner's grounds for relief are procedurally defaulted, and thus are barred from federal habeas review.

Although the undersigned has concluded that the claims in Grounds 1 and 2 are barred by the habeas statute of limitations, the procedural default of these claims is addressed herein as an alternative ground for dismissal.

**1. Exhaustion Requirement**

Generally, a federal court has authority to review a state prisoner's claims only if

16

available state remedies have been exhausted.  *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*).  The exhaustion doctrine, first developed in case law, has been codified at 28 U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim.  *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied*, 455 U.S. 1023 (1982).

Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32."  *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir. 1994).   Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court.  This is true even where alternative avenues of reviewing constitutional issues are still available in state court.  *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).  "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'"  *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

## 2.  Procedural Default

Ordinarily, unexhausted claims are dismissed without prejudice.  *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal with prejudice of a procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondent argues that Petitioner may no longer present his unexhausted claims to the state courts.  Respondent relies upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a) and the time limit bars, set out in Ariz. R. Crim. P. 32.9(c).  (Answer,

Doc. 24 at 21.)

**Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence. Moreover, no provision is made for a successive direct appeal. Accordingly, direct appeal is no longer available for review of Petitioner's unexhausted claims.

**Remedies by Post-Conviction Relief** – Under Arizona's preclusion, waiver and timeliness bars, Petitioner can no longer seek review by a subsequent PCR Petition.

Preclusion Bar – Under the rules applicable to Arizona's post-conviction process, a claim may not be brought in a petition for post-conviction relief if the claim was "[f]inally adjudicated on the merits on appeal or in any previous collateral proceeding." Ariz. R. Crim. P. 32.2(a)(2).

Waiver Bar - Under the rules applicable to Arizona's post-conviction process, a claim may not ordinarily be brought in a petition for post-conviction relief that "has been waived at trial, on appeal, or in any previous collateral proceeding."    Ariz.R.Crim.P. 32.2(a)(3).    Under this rule, some claims may be deemed waived if the State simply shows "that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding." *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (quoting Ariz.R.Crim.P. 32.2, Comments). *But see State v.* Diaz, 236 Ariz. 361, 340 P.3d 1069 (2014) (failure of PCR counsel, without fault by petitioner, to file timely petition in prior PCR proceedings did not amount to waiver of claims of ineffective assistance of trial counsel).

For others of "sufficient constitutional magnitude," the State "must show that the defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the ground or denial of a right." *Id*.   That requirement is limited to those constitutional rights "that can only be waived by a defendant personally." *State v. Swoopes*, 216 Ariz. 390, 399, 166 P.3d 945, 954 (App.Div. 2, 2007).   Indeed, in coming to its prescription in *Stewart v. Smith*, the Arizona Supreme Court identified: (1) waiver of the right to counsel, (2) waiver of the right to a jury trial, and (3) waiver of the right to a twelve-

18

1   person jury under the Arizona Constitution, as among those rights which require a

2   personal waiver.  202 Ariz. at 450, 46 P.3d at 1071.   Claims based upon ineffective

3   assistance of counsel are determined by looking at "the nature of the right allegedly

4   affected by counsel's ineffective performance.  *Id*.

5        Here, none of Petitioner's claims are of the sort requiring a personal waiver, and

6   Petitioner's claims of ineffective assistance similarly have at their core the kinds of

7   claims not within the types identified as requiring a personal waiver.

8        <u>Timeliness Bar</u> - Even if not barred by preclusion, Petitioner would now be barred

9   from raising his claims by Arizona's time bars.  Ariz.R.Crim.P. 32.4 requires that

10  petitions for post-conviction relief (other than those which are "of-right") be filed

11  "within ninety days after the entry of judgment and sentence or within thirty days after

12  the issuance of the order and mandate in the direct appeal, whichever is the later."  *See*

13  *State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive

14  petition, and noting that first petition of pleading defendant deemed direct appeal for

15  purposes of the rule).   That time has long since passed.

16       <u>Exceptions</u> - Rules 32.2(a) and  32.4(a) do not bar dilatory claims if they fall

17  within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h).  See Ariz.

18  R. Crim. P.  32.2(b) (exceptions to preclusion bar); Ariz. R. Crim. P.  32.4(a) (exceptions

19  to timeliness bar).  Petitioner has not asserted that any of these exceptions are applicable

20  to his claims.   Nor does it appears that such exceptions would apply.   The rule defines

21  the excepted claims as follows:

22           d. The person is being held in custody after the sentence
         imposed has expired;
23           e. Newly discovered material facts probably exist and such
         facts probably would have changed the verdict or sentence. Newly
24       discovered material facts exist if:
             (1) The newly discovered material facts were
25       discovered after the trial.
             (2) The defendant exercised due diligence in securing
26       the newly discovered material facts.
             (3) The newly discovered material facts are not
27       merely cumulative or used solely for impeachment, unless the
         impeachment evidence substantially undermines testimony which
28       was of critical significance at trial such that the evidence probably

19

would have changed the verdict or sentence.

    f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or

    g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or

    h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

    Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence.  Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application.  Here, Petitioner has long ago asserted the facts underlying his claims.  Paragraph (f) has no application because Petitioner filed a timely notice of appeal.  Paragraph (g) has no application because Petitioner has not asserted a change in the law since his last PCR proceeding.  Finally, paragraph (h), concerning claims of actual innocence, has no application to the procedural claims Petitioner asserts in this proceeding, including his assertion of insufficiency of the evidence.

    Therefore, none of the exceptions apply, and Arizona's time and waiver bars would prevent Petitioner from returning to state court.

    <u>Review on  PCR</u> – Finally, Arizona Rule of Criminal Procedure 32.9(c) requires that petitions for review from a ruling on a PCR petition be filed within 30 days of a ruling by the PCR court.  Here, Petitioner did not pursue a petition for review in his first PCR proceeding, and the time to do so has long since expired.

### 3. Application to Petitioner's Claims

    **a.  Grounds One and Two re Mental Competency** - Ground 1 asserts claims of ineffective assistance and abuse of discretion founded upon the failure of counsel and the trial court to pursue issues surrounding Petitioner's competency to stand trial.  (Amend.

Pet., Doc. 12 at 6.)   Ground 2 argues that Petitioner did not receive a fair trial, in violation of his Sixth Amendment rights, "because he lacked the requisite competency to understand the proceedings against him, let alone the ability to assist in his own defense." (*Id.* at 7.)

Respondent argues that these claims were first presented in grounds 1 through 3 of Petitioner's first PCR petition (Exhibit S), and that Petitioner failed to timely seek review of the denial in a petition for review, and is now barred from doing so under Ariz. R. Crim. P. 32.9(c).  (Answer, Doc. 24 at 21.)

Petitioner made two forays to the Arizona Court of Appeals.  The first was in his direct appeal, and the second was in his second PCR proceeding.  In neither of these did Petitioner argue his competency to stand trial.  (*See* Exhibit J, Opening Brief; and Exhibit EE, Petition for Review.)

Petitioner did argue in his first PCR petition that "Counsel did not investigate the competency of the Defendant" (Exhibit S at 11) and that Petitioner was incompetent to stand trial (*id.* at 12).   Petitioner cited a variety of relevant federal constitutional provisions and authorities in support of these arguments.  (*Id.* at 10-11 (citing *Strickland v. Washington*, 468 U.S> 668 (1984) and *Pate v. Robinson*, 383 U.S. 375 (1966).)  The undersigned finds, therefore, Petitioner fairly presented his claims in Grounds 1 and 2 to the PCR court in that proceeding.   However, presentation to the PCR court is not sufficient, and Petitioner did not seek review by the Arizona Court of Appeals in that proceeding.

Accordingly, Petitioner's state remedies on the claims in Grounds 1 and 2 were not properly exhausted.

Moreover, for the reasons discussed herein above, Petitioner cannot now seek review of those claims.  He is not entitled to seek successive appeals, and the time to seek review of his first PCR proceeding has expired. Ariz. R. Crim. P. 32.9(c). Petitioner cannot raise the claims in a new PCR proceeding.  To the extent the claims were raised in his first PCR proceeding, they were adjudicated on the merits.  (*See*

Exhibit U, M.E. 10/18/10 (dismissing first PCR for failure to make out colorable claim.) Thus, he would now be precluded from raising the claims in a new PCR proceeding. Ariz. R. Crim. P. 32.2(a)(2).  To the extent the claims were not raised in that proceeding, Petitioner would be barred from raising them in a new proceeding under Arizona's waiver bar.  Ariz. R. Crim. P. 32.2(a)(3).  Moreover, the time for filing a PCR petition has long since passed.  Ariz. R. Crim. P. 32.4(a).  And, Petitioner claims in Grounds 1 and 2 would not be subject to any of the exceptions to those rules.

Accordingly, Petitioner's state remedies on the claims in Grounds 1 and 2 are procedurally defaulted.

**b. Ground 3 – Illegal Search and Seizure** – Ground 3 of the Petition argues that Petitioner was subjected to an illegal search and arrest because: (1) the warrant was for a different address; (2) Petitioner was already in custody when the search was conducted, and accordingly the search could not be justified as incident to arrest; and (3) no consent was given.  (Amend. Pet. Doc. 12 at 8.)

Petitioner did not assert the claim in Ground 3 on direct appeal (Exhibit J), or in his Petition for Review in his second PCR proceeding (Exhibit EE).

Petitioner did assert a federal illegal search and seizure claim in his first PCR petition.  (Exhibit S at 2-10, 13-15.)  However, as discussed with Grounds 1 and 2, Petitioner failed to seek review by the Arizona Court of Appeals in that proceeding, is now prohibited from doing so, and is also procedurally barred from seeking review through a new appeal or PCR proceeding.

Accordingly, Petitioner's state remedies on the claims in Ground 3 were not properly exhausted and are now procedurally defaulted.

**c.  Ground 4 – Insufficiency of Evidence** – Ground 4 of the Petition argues that Petitioner was denied due process because the prosecutor pursued charges unsupported by evidence.  (Amend. Pet. Doc. 12 at 9.)

Petitioner did assert an insufficiency of the evidence claim in Argument IV in this Opening Brief to the Arizona Court of Appeals on direct appeal. That argument was limited, however, to the sufficiency of the evidence to support the findings of prior convictions. (Exhibit J, Opening Brief at 48, *et seq.*) In contrast, Ground 4 in the instant Petition does not relate to the prior convictions, but arguments about Petitioner's possession of the drugs and guns, etc.

For purposes of analyzing the statute of limitations, the undersigned has focused on the underlying allegations purporting to show that there was insufficient evidence to convict Petitioner, since those allegations are the core facts underlying the claim. (*See infra* Section III(A).) The true nature of Ground 4, however, is not that sufficient evidence was eventually not produced at trial, but an argument that the prosecutor engaged in misconduct in pursuing the prosecution given the lack of evidence on the offenses in that case. That claim was not raised in Petitioner's direct appeal.

It is true that new factual allegations do not ordinarily render a claim unexhausted, a petitioner may not "fundamentally alter the legal claim already considered by the state courts." *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986). *See also Chacon v. Wood*, 36 F.3d 1459, 1468 (9th Cir.1994). But, Petitioner's claim of misconduct of a prosecutor at the charging stage based on a lack of evidence is a fundamentally different claim from one asserting the insufficiency of the evidence at trial, particularly where the latter relates solely to prior convictions. Accordingly, the undersigned finds that the claim raised in Ground 4 was not fairly presented in Petitioner's direct appeal.

As with the other Grounds, Petitioner asserted Ground 4 in his first PCR petition. (Exhibit S at 16-18.) However, as discussed with Grounds 1, 2, and 3, Petitioner failed to seek review by the Arizona Court of Appeals in that proceeding, is now prohibited from doing so, and is also procedurally barred from seeking review through a new appeal or PCR proceeding.

Accordingly, Petitioner's state remedies on the claims in Ground 4 were not properly exhausted and are now procedurally defaulted.

**e. Summary Re Exhaustion** – Based upon the foregoing, the undersigned concludes that Petitioner has procedurally defaulted on all of the claims in his Amended Petition.

## 5. Cause and Prejudice

If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default. *Reed v. Ross*, 468 U.S. 1, 11 (1984).

"Cause" is the legitimate excuse for the default. *Thomas v. Lewis*, 945 F.2d 1119, 1123 (1991). "Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the term "cause" precise content.'" *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting Reed, 468 U.S. at 13), *cert. denied*, 498 U.S. 832 (1990). The Supreme Court has suggested, however, that cause should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials", made compliance impracticable, would constitute cause under this standard.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

Petitioner asserts no basis for a finding of cause and prejudice. To the extent that Petitioner might rely upon his purported mental health issues, his "mental retardation" (Amend. Pet. Doc. 1 at 7), or his untrained *pro se* status, or the ineffective assistance of counsel, the undersigned finds no basis for a finding of cause to excuse his procedure defaults.

**Untrained, *Pro Se* Status** - The "cause and prejudice" standard is equally applicable to pro se litigants, *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990); *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 908 (9th Cir. 1986), whether literate and assisted by "jailhouse lawyers", *Tacho*, 862 F.2d at 1381; illiterate and

24

unaided, *Hughes*, 800 F.2d at 909, or non-English speaking.  *Vasquez v. Lockhart*, 867
F.2d 1056, 1058 (9th Cir. 1988), cert. denied, 490 U.S. 1100 (1989).

Moreover, in *Tacho v. Martinez*, 862 F.2d 1376 (1988), the Ninth Circuit rejected
a prisoner's argument that his mental condition and reliance upon incompetent "jailhouse
lawyers" established cause to excuse a procedural default.   Here, Petitioner makes no
argument, and proffers no facts to show, that his mental impairments precluded him from
exhausting his state remedies.  The fact that Petitioner has now managed to assert his
claims, and the fact that he has asserted other claims throughout his state proceedings
suggest that his impairment is not so grave as to have precluded him from properly
raising his claims.

Further, with the exception of the claim in Ground 1 of ineffective assistance of
counsel with respect to Petitioner's competence, all of Petitioner's claims could have
been brought on direct appeal.  Petitioner was represented on direct appeal, and thus was
not dependent upon his own mental or legal prowess.  Petitioner waived counsel in his
first PCR proceeding, but was appointed counsel in his second PCR proceeding, and yet
still failed to bring the instant claims.

**Ineffective Assistance of Counsel** - Ineffective assistance of counsel may
constitute cause for failing to properly exhaust claims in state courts and excuse
procedural default.  *Ortiz v. Stewart*, 149 F.3d 923, 932, (9th Cir. 1998).  However, "[t]o
constitute cause for procedural default of a federal habeas claim, the constitutional claim
of ineffective assistance of counsel must first have been presented to the state courts as
an independent claim." *Cockett v. Ray*, 333 F.3d 938, 943 (9th Cir. 2003).   Petitioner has
not presented to the Arizona court of appeals any claim of ineffective assistance of
appellate counsel or PCR counsel with respect to the claims raised in this Petition.

It is true that a claim of ineffective assistance of PCR counsel in failing to assert a
claim of ineffective assistance of trial counsel, which is asserted as cause to excuse a
procedural default, need not be first exhausted.  *Dickens v. Ryan*, 740 F.3d 1302, 1322,
n.17 (9th Cir. 2014).  However, in *Patrick Poland v. Stewart*, 169 F. 3d 573 (9th Cir.

1    1999), the Ninth Circuit held that "[b]ecause there is no right to an attorney in state post-

2    conviction proceedings, there cannot be constitutionally ineffective assistance of counsel

3    in such proceedings."  *Id*. at 588 (quoting *Coleman v. Thompson*, 501 U.S. 722,  752

4    (1991)).

5        In *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), the Court recognized that because

6    courts increasingly reserve review of claims of ineffective assistance of trial counsel to

7    post-conviction relief proceedings, the ineffectiveness of counsel in such PCR

8    proceedings could effectively defeat any review of trial counsel's ineffectiveness.[2]

9    Accordingly, the Court recognized a narrow exception to the Court's ruling in *Coleman*,

10   *supra*, that the ineffectiveness of PCR counsel cannot provide cause.  Arizona, the state

11   at issue in *Martinez*, is just such a state, and accordingly ineffective assistance of PCR

12   counsel can establish cause to excuse a procedural default of a claim of ineffective

13   assistance of trial counsel.  In *Ha Van Nguyen*, 736 F.3d 1287 (9th Cir. 2013), the Ninth

14   Circuit extended *Martinez*  to PCR counsel's ineffectiveness in failing to bring claims of

15   ineffective assistance of appellate counsel.

16       However, *Martinez* is limited to claims of ineffective assistance of trial and

17   appellate counsel.  Thus, *Martinez* would have no application to Petitioner's claims in

18   Grounds 2, 3, and 4.

19       Moreover, the *Martinez* court made clear that the limited exception it was creating

20   for ineffectiveness of PCR counsel as "cause" did not extend outside the initial PCR

21   proceeding.

22       The holding in this case does not concern attorney errors in other
         kinds of proceedings, including appeals from initial-review
23       collateral proceedings, second or successive collateral proceedings,
         and petitions for discretionary review in a State's appellate courts. It
24       does not extend to attorney errors in any proceeding beyond the first
         occasion the State allows a prisoner to raise a claim of ineffective
25       assistance at trial, even though that initial-review collateral
         proceeding may be deficient for other reasons.
26

27   _____
     [2] In *Trevino v. Thaler*, 133 S.Ct. 1911 (2013), the Court extended *Martinez* to cases
28   where state law did not mandate that claims of ineffectiveness be brought in PCR
     proceedings, but provided no other meaningful avenue for review.

*Martinez*, 132 S.Ct. at 1320.  Here any claim of ineffective assistance of trial counsel would have been waived in Petitioner's first PCR proceeding when he proceeded without counsel of his own accord.  Thus there was no counsel to be ineffective.

Further, PCR counsel in Petitioner's second PCR proceeding would not have been ineffective for failing to raise claims of ineffective assistance of trial counsel because they were waived by Petitioner's failure to raise them in his first PCR proceeding, and thus barred under Arizona's waiver bar.  Ariz. R. Crim. P. 32.2(a)(3).  The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel." *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982).[3]

**Summary re Cause and Prejudice** – Based upon the foregoing, the undersigned concludes that Petitioner had failed to establish cause to excuse his procedural defaults.

Both "cause" and "prejudice" must be shown to excuse a procedural default, although a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945 F.2d 1119, 1123 n. 10 (9th Cir.1991).  Petitioner has filed to establish cause for his procedural default.  Accordingly, this Court need not examine the merits of Petitioner's claims or the purported "prejudice" to find an absence of cause and prejudice.


## 6.  Actual Innocence as "Cause"

The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances, to avoid a "miscarriage of justice."  *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986).  Accordingly, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added).  Although not explicitly limited to actual innocence claims, the Supreme Court has not yet

---

[3] If Petitioner's claim of ineffective assistance of counsel in Ground 1 were deemed subject to a showing of cause and thus not subject to dismissal as procedurally defaulted, the claim would still be barred as untimely.

recognized a "miscarriage of justice" exception to exhaustion outside of actual innocence. *See* Hertz & Lieberman, *Federal Habeas Corpus Pract. & Proc.* §26.4 at 1229, n. 6 (4th ed. 2002 Cumm. Supp.). The Ninth Circuit has expressly limited it to claims of actual innocence. *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008).

A petitioner asserting his actual innocence of the underlying crime must show "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" presented in his habeas petition. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). A showing that a reasonable doubt exists in the light of the new evidence is not sufficient. Rather, the petitioner must show that no reasonable juror would have found the defendant guilty. *Id.* at 329. This standard is referred to as the "*Schlup* gateway.*" *Gandarela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002).

Again, Petitioner makes no assertion of actual innocence in this proceeding. For the reasons discussed hereinabove in connection with the actual innocence exception to the habeas statute of limitations (*see infra* Section III(A)(5)), Petitioner's assertions of insufficiency of the evidence  are not sufficient and do not supply the new evidence required to make a showing of actual innocence.

Thus, Petitioner fails to make a showing that no reasonable juror would have found him guilty. Accordingly his procedurally defaulted and procedurally barred claims must be dismissed with prejudice.

## C. COGNIZABILITY OF CLAIMS

Respondent argues in the alternative that Grounds 3 and 4 are not cognizable on habeas review because they are founded upon the application of the exclusionary rule, which is generally inapplicable on habeas review. *See Stone v. Powell*, 428 U.S. 465, 481–82, 494 (1976).

It is true that the key to the limitation on the exclusionary rule in *Stone* is the provision of an "opportunity for full and fair consideration of [the defendant's] reliance upon the exclusionary rule with respect to seized evidence by the state courts at trial and

on direct review." *Id.* Hwoever, "[t]he relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." *Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 899 (9th Cir. 1996). Petitioner proffers nothing to suggest that he was not afforded such an opportunity, and the undersigned finds no basis to conclude that he was not.

Accordingly, if not barred from habeas review because of Petitioner's procedural default, the undersigned would conclude that Ground 3 was barred under *Stone*.

However, it is not clear to the undersigned that the *Stone* rule would extend to the prosecutorial misconduct claim in Ground 4. In *Kimmelman v. Morrison*, 477 U.S. 365 (1986), the Supreme Court held that the principles of *Stone* do not extend so far as to prevent a habeas petitioner from seeking relief based on counsel's failure to assert the exclusionary rule. The Court noted that "[w]hile defense counsel's failure to make a timely suppression motion is the primary manifestation of incompetence and source of prejudice advanced by respondent, the two claims are nonetheless distinct, both in nature and in the requisite elements of proof." *Id.* at 374. Similarly, the genesis of Petitioner's claim of misconduct may be prosecution's reliance upon evidence it should have known to be excludable, but the claim of misconduct is distinct from the associated search and seizure claim.

Because the undersigned finds Ground 4 plainly barred as procedurally defaulted, and because the parties have not had an opportunity to brief the extension of *Stone* to a claim of prosecutorial misconduct, the undersigned does not resolve the applicability of *Stone* to Ground 4.

## D. SUMMARY

Grounds 1 and 2 are barred by the habeas statute of limitations. Petitioner's state remedies on Grounds 1, 2, 3, and 4 are procedurally defaulted, and thus these claims are barred from habeas review. Ground 3 is barred from consideration under *Stone*. Accordingly, the Petition should be dismissed with prejudice.

## IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be in part on procedural grounds, and in part on the merits.

To the extent that Petitioner's claims are rejected on procedural grounds, under the reasoning set forth herein, the undersigned finds that "jurists of reason" would not

"find it debatable whether the district court was correct in its procedural ruling."

To the extent that Petitioner's claims are rejected on the merits, under the reasoning set forth herein, the constitutional claims are plainly without merit.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Petitioner's Amended Petition for Writ of Habeas Corpus, filed April 30, 2014 (Doc.  12) be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

## VI. EFFECT OF RECOMMENDATION

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.   Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-

31

47 (9th Cir. 2007).

Dated: March 17, 2015

13-1920r RR 15 03 09 on HC.docx

James F. Metcalf
United States Magistrate Judge